## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.: _____

CYNTHIA E. KISSNER,
on her behalf and on behalf of all
others similarly situated, and
LEONARD WERNER, on his
behalf and on behalf of all others
similarly situated,

       Plaintiffs,

      vs.

McDONALD'S CORPORATION,
a Delaware corporation,

      Defendant.
_____/

### CLASS ACTION COMPLAINT

Plaintiffs CYNTHIA E. KISSNER, on her behalf and on behalf of all others similarly situated, and LEONARD WERNER, on his behalf and on behalf of all others similarly situated, sue Defendant McDONALD'S CORPORATION, a Delaware corporation ("McDONALD'S"), and allege as follows:

### INTRODUCTION

1.    McDONALD'S sells billions of hamburgers, and other related products, including french fries and soft drinks, often sold in combination packages. Among McDONALD'S signature hamburgers is the Quarter Pounder®, which is comprised of a one-quarter pound hamburger with onion, pickles, ketchup and mustard on a bun. McDONALD'S also sells a Double Quarter Pounder®, which is comprised of two one-quarter pound hamburgers and all of the other components of a Quarter Pounder®. McDONALD'S offers both of these products with two slices

1

of cheese added, advertising and selling them as a Quarter Pounder® with cheese, and a Double Quarter Pounder® with cheese. McDonald's restaurants charge between .30¢ to .90¢ for the cheese added to these products.

2.      McDONALD'S also offers value meals, comprised of one of its hamburger products, french fries and a drink. Over time, McDONALD'S has offered value meals that include either a Quarter Pounder®, a Quarter Pounder® with cheese, a Double Quarter Pounder®, or a Double Quarter Pounder® with cheese.

3.      For years, McDONALD'S advertised and displayed on menus a Quarter Pounder®, a Quarter Pounder® with cheese, a Double Quarter Pounder®, and a Double Quarter Pounder® with cheese, as four separate items available to be purchased at McDonald's restaurants.

4.      At some point, while McDONALD'S continued to offer the Quarter Pounder® and the Double Quarter Pounder®, it ceased separately displaying these products for purchase on menus. Instead, McDONALD'S only listed the Quarter Pounder® with cheese and Double Quarter Pounder® with cheese as menu items, including their availability for purchase as part of a value meal. A customer who wanted a Quarter Pounder®, was required to order and pay for a Quarter Pounder® with cheese, which was given to the customer without cheese. Similarly, when a customer wanted a Double Quarter Pounder®, the customer was required to order and pay for a Double Quarter Pounder® with cheese, which was given to the customer without cheese. This practice was also employed when a customer wanted a value meal that included either a Quarter Pounder® or a Double Quarter Pounder®.

5.      As a result, notwithstanding the availability of Quarter Pounders® and Double Quarter Pounders®, customers have been forced, and continue to be overcharged for these products, by being forced to pay for two slices of cheese, which they do not want, order, or receive, to be able to purchase their desired product. As more fully explained herein, these practices have

2

occurred, and continue to occur (with one recent exception) at McDonald's restaurants throughout the country.

6.     MCDONALD'S practices of forcing customers to pay for cheese they do not receive as a condition to purchasing a Quarter Pounder®, a Double Quarter Pounder®, or a value meal that includes these products, is anticompetitive, and a per se violation of the antitrust laws, constituting an illegal tying arrangement.

7.     MCDONALD'S practices are also unfair, and are deceptive and misleading to the public, because notwithstanding the product history, promotion, advertising and availability of the Quarter Pounder® and the Double Quarter Pounder®, these products cannot be purchased either separately, or as part of a value meal, without the customer being overcharged, and being compelled to pay for unwanted and undelivered cheese.

8.     McDONALD'S is being unjustly enriched by these practices because it receives payment for cheese it does not deliver to its customers.

## The Parties and the Nature of the Proceedings

9.     Plaintiff CYNTHIA E. KISSNER ("KISSNER"), is sui juris, and a resident of Broward County, Florida, who regularly eats at McDonald's restaurants, and often orders Quarter Pounders®, Double Quarter Pounders®, and has ordered value meals that include one of these products.

10.     Plaintiff LEONARD WERNER ("WERNER"), is sui juris, and a resident of Miami-Dade County, Florida, who regularly eats at McDonald's restaurants, and often orders Quarter Pounders®, and Double Quarter Pounders®.

11.     Defendant McDONALD'S is a corporation organized, existing, and in good standing under the laws of the state of Delaware. McDONALD'S is the franchisor of McDonald's

restaurants located throughout the country, and owns and operates a number of McDonald's restaurants throughout the country.

12.     This is an action maintained on behalf of the Plaintiffs, individually, and as class representatives of the classes defined herein, for the recovery of damages in excess of the jurisdictional limits of this Court, exclusive of attorney's fees and costs, for the commission of unfair and deceptive trade practices, for unjust enrichment, and for violations of the Sherman Act for which the Plaintiff class members are entitled to recover treble damages and attorney's fees.

## Jurisdiction and Venue

13.     This Court has jurisdiction over this cause pursuant to:

      a.     28 U.S.C. §1331, with respect to the claims asserted under federal law, and

      b.     28 U.S.C. §1332 (d), with respect to the state court claims that are asserted on a class wide basis. With respect to these claims, the matter in controversy exceeds $5 million, exclusive of interest and costs, and there are members of the class who are citizens of a state different from that of Defendant McDONALD'S.

This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

14.     This Court has personal jurisdiction over Defendant McDONALD'S because it is authorized to do business, and in fact does business, in the Southern District of Florida, it has sufficient minimum contacts within this District, and Defendant McDONALD'S otherwise intentionally avails itself of the markets in this state and in this District through its promotion, marketing, distribution, and sale of McDONALD'S products, and its ownership and operation of numerous restaurants within this District, thus rendering the exercise of jurisdiction by this Court permissible under Florida law and the U.S. Constitution.

4

15.     Venue of this cause is proper in the Southern District of Florida pursuant to 28 U.S.C. §1391 (a), because there are a number of McDonald's restaurants owned by McDONALD'S in the District, a substantial part of the events or omissions giving rise to the claims at issue arose in this District, Class Members including the named Plaintiffs, residing in this District, have been harmed as a result of the Defendant's acts or omissions in this District, and Defendant McDONALD'S is subject to the Court's personal jurisdiction with respect to this action.

**Factual Allegations**

16.     McDONALD'S is an American hamburger and fast food restaurant chain that was founded in 1940. The first McDONALD'S franchise using the golden arches logo opened in Phoenix, Arizona in 1953. There are currently over 14,000 McDonald's restaurants located throughout the United States, of which approximately 82% are franchised. McDONALD'S owns the remaining approximate 2500 restaurants.

17.     Defendant McDONALD'S establishes business practices for all 14,000+ of the McDonald's restaurants, located within the United States. All products sold at McDonald's restaurants have to be approved by Defendant McDONALD'S. All advertising is coordinated and implemented by Defendant McDONALD'S. Store signage, including the menus, are developed by Defendant McDONALD'S, and is distributed to all locations. Each restaurant's cash registers are designed and approved by McDONALD'S, who dictates which products are sold, how they are sold, and their relative prices.

18.     One of McDONALD'S signature products is the Quarter Pounder®. In 1975, the Quarter Pounder® was trademarked, and was thereafter advertised and marketed as a product that includes the following components:

    a.     one Topp's ¼ lb frozen beef patty

   b.  one sesame seed bun

   c.  one tablespoon fresh onion...diced

   d.  mustard, ketchup

   e.  two HEINZ hamburger slices (pickles)

Over the ensuing years, McDONALD'S offered the Quarter Pounder® for sale at McDonald's restaurants.

  19.  At some point, in addition to the Quarter Pounder®, McDONALD'S began offering as a separate listed menu item, a Quarter Pounder® to which two slices of cheese were added. This product has been, and continues to be advertised and marketed as a "Quarter Pounder® with cheese", affirming that the product being offered for sale is a Quarter Pounder® hamburger to which cheese is added. The price of a Quarter Pounder® with cheese includes a charge for the two pieces of cheese that are added to the Quarter Pounder®.

  20.  At some point, McDONALD'S began offering for sale a Double Quarter Pounder®, which is a Quarter Pounder® with a second Topp's ¼ frozen beef patty. McDONALD'S also offered for sale as a menu item a Double Quarter Pounder® with cheese, which is a Double Quarter Pounder® to which two slices of cheese are added. The price of a Double Quarter Pounder® with cheese includes a charge for the two pieces of cheese that are added to the Double Quarter Pounder®.

  21.  McDONALD'S also offers value meals, which includes one of its offerings of hamburgers, with french fries and a soft drink, for a lower price than the price for which the items can be separately purchased.  Value meals have been available which have included Quarter Pounders®, Quarter Pounders® with cheese, Double Quarter Pounders®, or Double Quarter Pounders® with cheese.

22.     McDONALD'S offers certain products which, by design and composition, include cheese. For example, McDONALD'S offers both a hamburger and a cheeseburger.    A cheeseburger includes cheese as one of its components. McDONALD'S charges a higher price for a cheeseburger than for a hamburger, the price differential being attributable to the cost of the cheese included as part of a cheeseburger. McDONALD'S also offers a Big Mac®, which is a trademarked product whose components include two beef patties, special sauce, lettuce, cheese, pickles and onion, on a sesame seed bun.  The price of a Big Mac® includes a charge for the cheese that is included as a component of the product.

23.     McDONALD'S also offers customers the opportunity to customize their orders of standard products, by deleting, or by adding components to the products. For example, a customer can add cheese to a standard product, in which event the customer is charged between .20¢ and .40¢, for the added slice of cheese.

24.     Customers can purchase products from McDonald's restaurants by entering the restaurant and ordering at the counter, ordering at the drive through, and recently, by ordering through use of the McDONALD'S mobile app, which can be downloaded to a phone or other electronic device. In recent years, McDONALD'S point of purchase advertising, signage, and menus have been formatted so that many products and offerings are assigned a number. McDONALD'S menus have identified the Quarter Pounder® with cheese and the Double Quarter Pounder® with cheese as items on the menus, both of which are assigned numbers.  For some time, McDONALD's has not listed as menu items either the Quarter Pounder®, the Double Quarter Pounder®, or value meals including these products.

25.     When a customer wants to purchase a Quarter Pounder®, if they order from the menu and use the numbers assigned to products, they will ask for the number assigned to the Quarter Pounder® with cheese, and order it without cheese. If the customer orders a Quarter

Pounder® by name, they are required to order a Quarter Pounder® with cheese, and order it without cheese. In either event, the customer is charged for a Quarter Pounder® with cheese, and receives a Quarter Pounder®. This also applies to the ordering and purchase of a Double Quarter Pounder®. In all such instances, McDONALD'S overcharges the customers for their desired products, because the customers are charged between .30¢ and .90¢ for two slices of cheese the customers do not want, do not order, and do not receive.

26.     The receipts for the purchases of these products corroborates McDONALD'S practices. The following receipts were given to Plaintiff KISSNER for her purchases:

**RECEIPT "A":**                                    **RECEIPT "B":**



Receipt "A" evidences that, in connection with this transaction, Plaintiff KISSNER was charged the price of a Quarter Pounder® with cheese for both the Quarter Pounder® with cheese and for the Quarter Pounder® she purchased. Receipt "B" evidences that, in connection with this

8

transaction, Plaintiff KISSNER was charged the price of the Double Quarter Pounder® with cheese for both the Double Quarter Pounder® with cheese and for the Double Quarter Pounder® she purchased.

27.     Plaintiff WERNER has experienced the same practices. Plaintiff WERNER received Receipt "C", in connection with his purchase of a Quarter Pounder® and a Quarter Pounder® with cheese, which reflects that he was charged the same price for a Quarter Pounder® and for a Quarter Pounder® with cheese. Plaintiff WERNER received Receipt "D", when he ordered a Double Quarter Pounder® and a Double Quarter Pounder® with cheese, and was charged the same price for both products.

**RECEIPT "C":**

**RECEIPT "D":**

28.      Further, customers who want to purchase a value meal that includes a Quarter Pounder® or a Double Quarter Pounder®, and place their order using the numbers assigned to the value meal on the menus, are forced to order a value meal that includes either a Quarter Pounder® with cheese, or a Double Quarter Pounder® with cheese, and to order it without cheese. Even if the value meal is ordered by description rather than by number, the customer is placed in the same position. In both instances, these customers are charged the price of a value meal that includes a Quarter Pounder® with cheese or a Double Quarter Pounder® without cheese, notwithstanding that they want a value meal that includes a Quarter Pounder® or a Double Quarter Pounder®. In all such instances, the value meal delivered includes a Quarter Pounder® or a Double Quarter Pounder®, as applicable.

29.      Notwithstanding McDONALD'S ongoing practices, McDONALD'S has affirmed that a Quarter Pounder® can be purchased, and for less than a Quarter Pounder® with cheese, and that a Double Quarter Pounder® can be purchased, and less expensively than a Double Quarter Pounder® with cheese. In this regard, upon information and belief, McDONALD'S registers have always included an icon for a Quarter Pounder®, and a separate icon to order and charge a higher price for a Quarter Pounder® with cheese, or some method for separately accepting orders and charging for these two distinct products. Similarly, upon information and belief, the registers have included icons to enable a cashier to ring up and charge for a Double Quarter Pounder®, and a separate icon to ring up and charge a higher price for a Double Quarter Pounder® with cheese, or some method for separately accepting orders for these two distinct products. This is corroborated by Receipt "E", which reflects the purchase of a "Qtr Pounder Hamb", which is a Quarter Pounder®, for $3.79, and the purchase of a "Qtr Pounder Cheese", which is a Quarter Pounder® with cheese, for $4.19:

## RECEIPT "E":

```
BUY ONE GET ONE FREE QUARTER POUNDER
      W/CHEESE OR EGG MCMUFFIN
      Comments or Concerns:
          1-855-LOVE-MCD
          help@lovemcd.com
          Survey Code:
   08061-13410-31618-16579-00116-4


      McDonald's Restaurant #8061
       5986 SOUTH FLAMINGO ROAD
        COOPER CITY, FL 33328
          TEL# 954-434-0615


 KS# 13              03/16/2018 04:57 PM
 Side1                       Order 41

 1 Qtr Pounder Cheese              4.19
 1 Qtr Pounder Hamb               3.79
 1 Happy Meal 4 Piece             3.00
    1 Tangy Honey Must Cup
    1 Extra Kids Fry
    1 Snoopy
    1 Apple Juice

 Subtotal                        10.98
   Tax                            0.66
 Take-Out Total                  11.64

 Cashless                        11.64
 Change                           0.00

 MER# 494033
 CARD ISSUER         ACCOUNT#
 VISA CREDIT SALE ************4365
 TRANSACTION AMOUNT               11.64
 CHIP READ
 AUTHORIZATION CODE ~ 44059D
 SEQ# 104731
 AID: A0000000031010

    Order McDonald's on UberEATS
 and score free delivery on your next
  McDonald's order March 19-April 2,
       See UberEATS for details.
```

11

30.     Further, there are third party companies that provide delivery services for restaurants, including McDonald's restaurants. These third party services list on their menus both a Quarter Pounder® and a Quarter Pounder® with cheese, and charge less for the Quarter Pounder® than for the Quarter Pounder® with cheese. These companies also list on their menus both a Double Quarter Pounder® and a Double Quarter Pounder® with cheese, and charge less for the Double Quarter Pounder® than for the Double Quarter Pounder® with cheese. These third party companies' systems are synced with McDONALD'S ordering system, and are able to place these orders and charge different prices for the Quarter Pounder® and the Quarter Pounder® with cheese because McDONALD'S offers a Quarter Pounder® to the third party companies for a lower price than a Quarter Pounder® with cheese, and charges the third party companies less for a Double Quarter Pounder® than for a Double Quarter Pounder® with cheese.

31.     Further, McDONALD'S recently updated its app. On its current app, McDONALD'S lists a Quarter Pounder®, as a menu item, and also lists a Quarter Pounder® with cheese as a separate menu item. The Quarter Pounder® is priced between .30¢ and .90¢ less than the Quarter Pounder® with cheese. Similarly, a Double Quarter Pounder® is listed as a menu item as is a Double Quarter Pounder® with cheese. The Double Quarter Pounder® can be purchased for at least .80¢ less than the separately listed Double Quarter Pounder® with cheese.

32.     Notwithstanding McDONALD'S app menu and pricing, customers who walk into, or drive through a McDonald's restaurant today and order a Quarter Pounder® or a Double Quarter Pounder®, are still forced to order, and are charged the price of a Quarter Pounder® with cheese to purchase a Quarter Pounder®, and are forced to order, and are charged for a Double Quarter Pounder® with cheese to purchase a Double Quarter Pounder®. Also, customers who want a value meal that includes either a Quarter Pounder® or a Double Quarter Pounder® still have to

order and pay the higher price for a value meal that includes either a Quarter Pounder® with cheese, or a Double Quarter Pounder® with cheese, as applicable.

33.    Ultimately, through these practices, customers who want a Quarter Pounder® or a Double Quarter Pounder®, or a value meal including one of these products, have been overcharged, and coerced to order, purchase and pay for cheese that they do not want and do not receive as a condition to their purchase of the desired hamburger.

34.    McDONALD'S benefits from the practices described herein, and from each of the sales made pursuant to these practices, in manners including the following:

   a.    McDONALD'S own McDonald's restaurants at which the disputed sales occur, at which McDONALD'S directly collects all sums paid for the products in issue,

   b.    McDONALD'S receives franchise fees from its franchisees based on their revenues, which includes the revenues generated from the practices described herein, and

   c.    As a result of these practices, McDONALD'S profit margins are increased, as are the profit margins of its franchisees, which benefits McDONALD'S stock price and facilitates McDONALD'S sale of new franchises.

35.    The named Plaintiffs have purchased Quarter Pounders®, Double Quarter Pounders®, and value meals including these products, and has been charged the prices charged for the Quarter Pounder® with cheese, the Double Quarter Pounder® with cheese, and the price of value meals that include these products.

**Facts Specific to Named Plaintiffs**

36.    During the four years before the filing of this Complaint (the "Relevant Time Period"), within the District, there were occasions on which Plaintiffs KISSNER and WERNER

purchased and received Quarter Pounders® and Double Quarter Pounders®, and were charged for Quarter Pounders® with cheese and Double Quarter Pounders® with cheese.

37.    Also, during the Relevant Time Period, within the District, there were occasions on which Plaintiff KISSNER purchased and received value meals that included a Quarter Pounder® or a Double Quarter Pounder®, and was charged for value meals that included a Quarter Pounder® with cheese or a Double Quarter Pounder® with cheese.

38.    Plaintiffs KISSNER and WERNER suffered injury as a result of their purchases because they were overcharged, and were required to pay for cheese, which is not a component of either a Quarter Pounder® or a Double Quarter Pounder®, that they did not want and did not receive.

## Class Action Allegations

39.    Plaintiffs KISSNER and WERNER bring this lawsuit as a class action on their own behalf and on behalf of all other persons similarly situated as members of the proposed class, pursuant to Fed. R. Civ. P. 23 (a), (b) (1), (b) (2), (b) (3), and (c) (4). This action satisfies the numerosity, commonality, typicality, adequacy, ascertainability, predominance, and superiority requirements of these provisions.

40.    The Class claims are based on McDONALD'S conduct of misrepresenting their products through its advertising and signage, and charging customers for unwanted and undelivered cheese when a customer wants a Quarter Pounder®, a Double Quarter Pounder®, or a value meal that includes one of these products.

41.    Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23 (a), (b) (1), (b) (2), (b) (3), and (c) (4), on behalf of themselves and a nationwide class, defined as follows:

**Nationwide Class**

With respect to Count I, the Sherman Act Tying Arrangement claim, all retail consumers who, during the Relevant Time Period, purchased from a McDonald's restaurant in the United States, either:

    a.    a Quarter Pounder®, and was charged for a Quarter Pounder® with cheese,

    b.    a Double Quarter Pounder®, and was charged for a Double Quarter Pounder® with cheese,

    c.    a value meal that included a Quarter Pounder®, or

    d.    a value meal that included a Double Quarter Pounder®.

42.    Plaintiffs also seek to represent the following subclasses, defined as follows:

**Florida Subclass**

With respect to Count II, the Florida Deceptive and Unfair Trade Practices Act claims, all retail consumers who, within the Relevant Time Period, purchased from a McDonald's restaurant in Florida, either:

    a.    a Quarter Pounder®, and was charged for a Quarter Pounder® with cheese,

    b.    a Double Quarter Pounder®, and was charged for a Double Quarter Pounder® with cheese,

    c.    a value meal that included a Quarter Pounder®, or

    d.    a value meal that included a Double Quarter Pounder®.

**U.E. Subclass**

With respect to Count III, the Unjust Enrichment claim, all retail consumers who, within the Relevant Time Period, purchased from a McDonald's restaurant in Florida, California, New York, Pennsylvania, Ohio, Michigan, Nebraska, Illinois or Texas, or in such additional states ultimately included herein (collectively the "U.E. States"), either:

    a.    a Quarter Pounder®, and was charged for a Quarter Pounder® with cheese,

    b.    a Double Quarter Pounder®, and was charged for a Double Quarter Pounder® with cheese,

    c.    a value meal that included a Quarter Pounder®, or

    d.    a value meal that included a Double Quarter Pounder®.

43.    Excluded from the Nationwide Class, the Florida Subclass and the U.E. Subclass (the Nationwide Class, the Florida Subclass, and the U.E. Subclass each separately referred to as a "Class", and collectively as the "Classes", and the members of the Classes referred to as the "Class Members"), are:

  a. Defendant McDONALD'S, any entity or division in which Defendant has a controlling interest, and its legal representatives, employees, officers, directors, assigns, heirs, successors, whole or part subsidiaries, their affiliates, and franchisees,

  b. the Judge to whom this case is assigned and the Judge's staff,

  c. governmental entities, and

  d. those persons who have suffered personal injuries as a result of the facts alleged herein.

44. Plaintiffs reserve the right to add to or amend the Class definitions if discovery or further investigation reveal that any Class should be added, expanded, divided into additional subclasses, or modified in any other way.

## Numerosity

45. This action satisfies the numerosity requirement of Fed. R. Civ. P. 23 (a) (1). Upon information or belief, during the Relevant Time Period, through its restaurants, McDONALD'S has sold hundreds of thousands or millions of Quarter Pounder® and Double Quarter Pounders® while charging for cheese that was not ordered, wanted or delivered, both nationwide, within the state of Florida, and within the U.E. States. Each of these Classes are so numerous that individual joinder of all Class Members is impracticable.

46. Although the exact number of Class Members is uncertain and can only be ascertained as described herein, the number is great enough that joinder is impracticable. Further, the disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

## Common Questions of Law and Fact

47.     There are numerous questions of law and fact that are common to the claims of Plaintiffs and all Class Members, which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the Class Members are the following:

a.      Is the Quarter Pounder® a trademarked product of McDONALD'S?

b.      Has McDONALD'S advertised and marketed the Quarter Pounder®?

c.      What are the components of a Quarter Pounder®?

d.      Has McDONALD'S offered for sale a Quarter Pounder® with cheese?

e.      Has McDONALD'S offered for sale a Quarter Pounder®?

f.      Does McDONALD'S direct or require a customer who wants a Quarter Pounder® to order and pay for a Quarter Pounder® with cheese?

g.      Has McDONALD'S advertised and marketed the Double Quarter Pounder®?

h.      What are the components of a Double Quarter Pounder®?

i.      Has McDONALD'S offered a Double Quarter Pounder®?

j.      Does McDONALD'S direct or require a customer who wants a Double Quarter Pounder® to order and pay for a Double Quarter Pounder® with cheese?

k.      Does McDONALD'S offer a value meal that includes a Quarter Pounder®, fries, and a drink?

l.      Does McDONALD'S direct or require a customer who wants to purchase a value meal that included a Quarter Pounder® to pay the price of a value meal that includes a Quarter Pounder® with cheese?

m. Does McDONALD'S offer a value meal that includes a Double Quarter Pounder®, fries, and a drink?

n. Does McDONALD'S direct or require a customer who wants to purchase a value meal that includes a Double Quarter Pounder® to pay the price of a value meal that includes a Double Quarter Pounder® with cheese?

o. Are a Quarter Pounder® and cheese two separate products?

p. Does McDONALD'S have sufficient market power in the sale of burgers to coerce customers to pay for unwanted cheese?

q. Are a Double Quarter Pounder® and cheese two separate products?

r. Does McDONALD'S have sufficient market power in the sale of burgers to coerce customers to pay for unwanted cheese?

s. Has McDONALD'S engaged in unfair or deceptive trade practices with respect to the advertising, marketing, and sale of:

    i. Quarter Pounders®,

    ii. Double Quarter Pounders®,

    iii. Value meals that include Quarter Pounder®, and

    iv. Value meals that include Double Quarter Pounders®

t. Has McDONALD'S overcharged for the sale of:

    i. Quarter Pounders®,

    ii. Double Quarter Pounders®,

    iii. Value meals that include Quarter Pounder®, and

    iv. Value meals that include Double Quarter Pounders®

u.     Has McDONALD'S been unjustly enriched at the Class Members' expense by requiring them to purchase and pay for cheese they do not want or receive?

v.     Have Plaintiffs and the members of the Classes been damaged by McDONALD'S conduct?

w.    Are Plaintiffs and the members of the Classes entitled to recover damages as a result of McDONALD'S conduct?

x.     Are Plaintiffs and the members of the Classes entitled to recover treble damages as a result of McDONALD'S anticompetitive conduct?

y.     Should McDONALD'S be enjoined from engaging in the practices described herein?

48.    The common questions in this case are capable of generating common answers which are apt to drive the resolution of this action.

## Typicality

49.    Plaintiffs' legal claims are typical of the claims of the Class Members, and arise from the same course of conduct by Defendant McDONALD'S. There is a sufficient nexus between the legal claims of the named Plaintiffs and the Class Members. The representative Plaintiffs, like all Class Members, have been damaged by Defendant McDONALD'S actions. Further, the factual basis of Defendant McDONALD'S misconduct is common to all Class Members and represents the common thread of misconduct resulting in damages to all Class Members. The legal claims and relief Plaintiffs seek are typical of the legal claims and relief sought for the Class Members.

## Adequacy of Representation

50.     Plaintiff KISSNER and Plaintiff WERNER are adequate representatives of the Classes, and will fairly and adequately protect the interests of the Class Members. Plaintiffs KISSNER and WERNER are committed to the vigorous prosecution of this action, and have no conflict with any other Class Members.

51.     Plaintiffs have retained counsel with experience in complex commercial litigation, including in defending various class actions, and in the handling of the type of claims that are asserted in this action. Putative class counsel have the resources, education, and experience to successfully prosecute this class action. Plaintiffs' counsel does not have any relationship with the named Plaintiffs, or interests adverse to those of Plaintiffs or of the Class Members.

## Ascertainability

52.     The Classes are clearly ascertainable because their members can be readily identified through objective criteria that are administratively feasible through a manageable process, using methods including the following:

> a.      Defendant McDONALD'S maintains records regarding its sale of its products, including Quarter Pounders®, Quarter Pounders® with cheese that are ordered without cheese, Double Quarter Pounders®, Double Quarter Pounders® with cheese that are ordered without cheese, value meals that include Quarter Pounders® that are ordered without cheese, and value meals including Double Quarter Pounders® that are ordered without cheese. Those members of the Class who used credit cards to pay for their purchases during the Relevant Time Period can be identified from Defendant McDONALD'S records, which includes information regarding Class Members' credit card numbers.

      b.     Consumers shall be able to recall and affirm that they are Class Members. The products in issue are not costly. Under such circumstances, it is appropriate to have members of the Classes identify themselves by submitting affidavits affirming their status as Class Members.

### Predominance of Common Issues

53.     There are numerous common questions of law and fact that predominate over any questions affecting only individual Class Members. The answers to these common questions of law and fact will advance resolution of the litigation as to all Class Members and claims. These predominant common legal and factual questions include each of those identified in paragraph 47, hereof.

### Superiority

54.     Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant McDONALD'S unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

55.     The prosecution of separate actions by the individual Class Members on the claims asserted herein would create a risk of inconsistent or varying adjudications for individual Class Members, which would establish incompatible standards of conduct for Defendant McDONALD'S.

56.     Because adjudication with respect to individual Class Members would, as a practical matter, be dispositive of the interest of other Class Members, or impair substantially or impede their ability to protect their interests, a class action is superior to all other methods of litigation.

57.     Absent a class action, most Class Members would likely find the cost of litigating their individual claims prohibitively high and they would, therefore, not have any effective remedy

at law. Because the damages suffered by each individual Class Member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class Members to redress the wrongs done to each of them, such that most or all Class Members would have no rational economic interest in individually controlling the prosecution of specific actions. Further, Class Members are disbursed throughout the country, raising the possibility of numerous lawsuits in numerous jurisdictions if this action does not proceed as a class action.

58.     The burden imposed on the judicial system by individual litigation by even a small fraction of the Class Members would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23 (b) (3) (A). Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.

59.     The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class member than would piecemeal litigation. Compared to the expense, burden, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the Court, and the public of class treatment in this Court, making class adjudication pursuant to Fed. R. Civ. P. 23 superior to other alternatives.

### 23 (b) (1) Requirements

60.     Certification is appropriate under Fed. R. Civ. P. 23(b)(1), because the prosecution of separate claims or defenses by or against members would create a risk of:

        a.     inconsistent or varying adjudications concerning individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

b.    adjudications with respect to individual Class Members that, as a practical matter, would be dispositive of the interests of other members not parties to the individual adjudications or would substantially impair or impede the ability to protect their interests.

61.    Specifically, the rights of Class Members regarding claims against Defendant McDONALD'S for actively tying the sale of two separate products, overcharging for products, charging for unwanted products and unjustly benefitting at the expense of the Class Members, overlap among the Class Members.

62.    Under these circumstances, it is not possible for the rights of Class Members to be determined individually without disposing of or substantially affecting the rights of other Class Members and their entitlement to recover damages incurred as a result of Defendant McDONALD'S acts and omissions.

## Rule 23 (b) (2) Requirements

63.    Certification is appropriate under Fed. R. Civ. P. 23 (b) (2), because Defendant McDONALD'S has acted in a manner generally applicable to all Class Members, thereby making injunctive or declaratory relief concerning the Classes as a whole, appropriate.

64.    More specifically Defendant McDONALD'S has overcharged the Class Members for Quarter Pounders®, Double Quarter Pounders® and value meals including these products, forcing them to pay for an unwanted product they did not receive.

## Rule 23 (b) (3) Requirements

65.    Plaintiff and the Class are seeking money damages. Thus, certification is appropriate under Fed. R. Civ. P. 23 (b) (3), because the common questions set forth above predominate over any questions affecting only individual issues, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The Class Members

have an interest in class adjudication rather than individual adjudication because of the overlapping rights. It is highly desirable to concentrate the resolution of these claims in this single forum. Management of the Classes will be less difficult than individual lawsuits.

### Equitable Relief

66.     Classwide declaratory, equitable, and injunctive relief is appropriate under Rule 23(b)(1) and/or (b)(2), because Defendant McDONALD'S has acted on grounds that apply generally to the Classes, and inconsistent adjudications with respect to the Defendant's liability would establish incompatible standards and substantially impair or impede the ability of Class Members to protect their interests. Classwide relief assures fair, consistent, and equitable treatment and protection of all Class Members, and uniformity and consistency in Defendant's discharge of its duties to perform corrective action regarding the products and practices in issue.

### COUNT I
### Sherman Act Tying Arrangement

67.     Plaintiffs KISSNER and WERNER and the Nationwide Class Members incorporate by reference paragraphs 1 through 66.

68.     This is a claim for violations of § 1 and § 15 of the Sherman Act, for Defendant McDONALD'S and its franchisees' combinations in restraint of trade and commerce through the employment of illegal tying arrangements.

69.     The Quarter Pounder® is a distinct product. Cheese is a second, separate and distinct product from a Quarter Pounder®.

70.     The Double Quarter Pounder® is a distinct product. Cheese is a second, separate and distinct product from a Double Quarter Pounder®.

71.     By definition and description, which has been affirmed and reinforced through McDONALD'S promotion and advertising, a Quarter Pounder® does not include cheese. Instead, cheese is a separate and distinct product that can be added to a Quarter Pounder®.

72.     By definition and description, and reinforced through McDONALD'S promotion and advertising, a Double Quarter Pounder® does not include cheese. Instead, cheese is a separate and distinct product that can be added to a Double Quarter Pounder®.

73.     McDONALD'S forced and coerced members of the Nationwide Class to purchase and pay for the separate and distinct tied product, cheese, as a condition to purchasing the tying product, a Quarter Pounder®, a Double Quarter Pounder®, or value meals including these products, even though the Plaintiff Class Members did not want, and did not receive the tied product. Members of the Nationwide Class are forced to pay for the unwanted tied products that they do not receive as a condition to purchasing a Quarter Pounder® or a Double Quarter Pounder®, or a value meal including one of these products.

74.     The uniqueness and desirability of McDONALD'S tying products, including the Quarter Pounder® and the Double Quarter Pounder®, are such that McDONALD'S is able to coerce customers to pay for unwanted cheese that is not delivered, as a condition to obtaining the desired product.

75.     McDONALD'S has sufficient economic and market power in the fast food quarter pound hamburger market to force customers to purchase and pay for cheese, even though they do not want the product and do not receive it, as a condition to purchasing a Quarter Pounder® or a Double Quarter Pounder®. The desirability and uniqueness to consumers of the Quarter Pounder® and Double Quarter Pounder® confers the requisite economic power on McDONALD'S in the tying product market to coerce the purchase of, and payment for unwanted and undelivered cheese.

76.     McDONALD'S actions involve a not insubstantial amount of interstate commerce in the tied product market of cheese. The total amount of business in the tied product market of cheese is not insubstantial or de minimis. Annually, customers are forced to purchase millions of

slices of cheese for which McDONALD'S charges at least .20 cents per slice, when the customers do not want, and do not receive the cheese.

77.    McDONALD'S tying of these two products constitutes a per se violation of the Sherman Act.

78.    Each of the members of the Nationwide Class sustained damages as a proximate result of paying for an unwanted tied product that they did not receive. Each of the Plaintiff Nationwide Class Members have been injured in their property by reason of McDONALD'S employing this tying arrangement which is forbidden by the antitrust laws. As a result thereof, pursuant to 15 U.S.C. §15 (a), each of the Nationwide Class Members are entitled to three fold the damages sustained by them, the cost of this suit, and reasonable attorney's fees.

WHEREFORE, Plaintiffs KISSNER and WERNER, individually and on behalf of all of the similarly situated members of the Nationwide Class, hereby demands:

a.    certification of the proposed Plaintiffs' Nationwide Class,

b.    appointment of the Plaintiffs as representatives of the Plaintiffs' Nationwide Class,

c.    appointment of the undersigned counsel as lead counsel for the Plaintiffs' Nationwide Class,

d.    the award of compensatory damages,

e.    award of three fold the damages sustained by each Nationwide Class Member,

f.    enjoining the continuing wrongful conduct pursuant to 15 U.S.C. §26,

g.    an award of pre and post judgment interest,

h.    an award of taxable costs, and

i.    the recovery of reasonable attorney's fees.

## COUNT II
## VIOLATION OF THE FLORIDA DECEPTIVE
## AND UNFAIR TRADE PRACTICES ACT
### (Florida Subclass)

79.     Plaintiffs KISSNER and WERNER and the Florida Subclass Class Members incorporate by reference paragraphs 1 through 66.

80.     This is an action for relief under §§ 501.201 to 501.213 of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA").

81.     The express purpose of FDUTPA is to "protect the consuming public...from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2), Fla. Stat.

82.     Section 501.203(7), Fla. Stat., defines "Consumer" as "an individual; child, by and through its parent or legal guardian; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; or any other group or combination." Plaintiff and the Florida Subclass Members are "Consumers" within the meaning of §501.203(7), Fla. Stat.

83.     Section 501.203(8), Fla. Stat., defines "Trade or Commerce" as:

> [T]he advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or Commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.

84.     Plaintiffs and the Florida Class Members are consumers protected by FDUPTA.

85.     The advertising, menus, presentation, soliciting, providing, offering, and distributing of Quarter Pounders®, Double Quarter Pounders® and value meals including these products by Defendant McDONALD'S to Plaintiffs and to Florida Class Members is "Trade or Commerce" within the meaning of § 501.203(8), Fla. Stat. FDUPTA §501.204(1) declares as unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or

27

deceptive acts or practices in the conduct of any trade or commerce." The Defendant's acts and omissions as well as its failure to use reasonable care in this matter as alleged herein constitute unconscionable acts or practices, as well as deceptive and unfair acts or practices in the conduct of Defendant's trade or commerce pursuant to §501.204(1), Fla. Stat.

86.    Specifically, for years McDONALD'S developed a distinct product, trademarked the name "Quarter Pounder®" for the product, and marketed, advertised, and sold Quarter Pounders® and Double Quarter Pounders®. By doing so, McDONALD'S established that the Quarter Pounder® and Double Quarter Pounder® do not include cheese, and are McDONALD'S products that are available to be purchased. Further, by naming and advertising as additional products the "Quarter Pounder® with cheese", and the "Double Quarter Pounder® with cheese", McDONALD'S affirmed and  reinforced that it sells as additional products, a Quarter Pounder®, to which a customer can add cheese, and a Double Quarter Pounder®, to which a customer can add cheese.

87.    As a result of the creation, naming, history of the sale, advertising, and promotion of the Quarter Pounder®, and the name recognition created with respect thereto, McDONALD'S conveys and represents to its customers that they can purchase a Quarter Pounder®, and that they will be charged less than they will be charged for a Quarter Pounder® with cheese, and that they can purchase a Double Quarter Pounder®, and that they will be charged less than they will be charged for a Double Quarter Pounder® with cheese.

88.    McDONALD'S actually sells a Quarter Pounder® with cheese to its customers who want to purchase a Quarter Pounder®. McDONALD'S misleads and forces the customer to order and pay for a Quarter Pounder® with cheese to receive a Quarter Pounder®, requiring the customer to pay for cheese they do not want and do not receive. McDONALD'S menu boards no longer

identify Quarter Pounders® or Double Quarter Pounders®, and only list these products "with cheese".

89.    McDONALD'S overcharges its customers for Quarter Pounders®, Double Quarter Pounders®, and for value meals that include these products. McDONALD'S forces its customers to pay for cheese they do not want or receive. McDONALD'S companywide policy in this regard is an unfair and deceptive trade practice.

90.    McDONALD'S has engaged, and continues to engage, in conduct that is unfair, deceptive and misleading to consumers in violation of FDUTPA.

91.    McDONALD'S conduct and business practices are unfair because consumers are overcharged for their desired products, and are forced to purchase and pay for cheese that is not part of the product they want to purchase, which they do not order, they do not want, and they do not receive. The customers are forced to overpay for a Quarter Pounder® and for a Double Quarter Pounder®.

92.    McDONALD'S conduct and business practices are deceptive because they are likely to deceive consumers, including Plaintiffs and members of the Florida Class, by misrepresenting through its advertising and promotion that a customer can order and pay for a Quarter Pounder®, or a Double Quarter Pounder®, or value meals including such products.

93.    McDONALD'S conduct and practices misled and caused Plaintiffs and members of the Florida Class to pay for cheese that was not wanted or received, and to overpay for the products they desired.

94.    Plaintiffs and the Florida Subclass have been aggrieved by Defendant's unfair and deceptive practices in violation of FDUPTA, by overpaying for the desired products, and by paying for unwanted products.

95.    As a direct and proximate result of Defendant's violations of FDTUPA, Plaintiffs and the Florida Subclass have suffered actual damages in that they overpaid for Quarter Pounders®, Double Quarter Pounders® and value meals including these products, paying for cheese they did not want or receive, so that Plaintiffs and Florida Subclass Members are entitled to relief pursuant to FDUPTA §501.211(2), Fla. Stat. Plaintiffs and Florida Subclass Members are entitled to recover the difference in value between what they were compelled to pay for and purchase, and what they wanted and received, and all related consequential damages.

96.    Further, as a direct and proximate result of Defendant McDONALD'S acts and omissions, Plaintiffs and Florida Subclass Members were forced to retain undersigned counsel and are obligated to pay attorneys' fees and costs. Plaintiffs and Florida Subclass Members are entitled to recover attorney's fees and costs pursuant to §501.2105, Fla. Stat., upon prevailing in this matter.

WHEREFORE, Plaintiffs KISSNER and WERNER, individually and on behalf of all others similarly situated, hereby demand:

       a.    certification of the proposed Plaintiff Florida Subclass,

       b.    appointment of Plaintiffs KISSNER and WERNER as representatives of the Plaintiff Florida Subclass,

       c.    appointment of the undersigned counsel as lead counsel for the Plaintiff Florida Subclass,

       d.    an award of compensatory damages,

       e.    enjoining the wrongful conduct pursuant to §501.211 (1), Fla. Stat.,

       f.    an award of pre and post-judgment interest,

       g.    an award of taxable costs,

       h.    an award of attorney's fees and costs pursuant to § 501.2105, Fla. Stat., and

i.      any and all such further relief as this Court deems just and proper.

## COUNT III – UNJUST ENRICHMENT
### (U.E. Subclass)

97.     Plaintiffs KISSNER and WERNER and the U.E. Subclass Members incorporate by reference paragraphs 1 through 66.

98.     McDONALD'S product line includes a Quarter Pounder® and a Double Quarter Pounder®. Neither of these products include cheese.

99.     McDONALD'S requires a customer who wants a Quarter Pounder® to order and pay for a Quarter Pounder® with cheese, without cheese.  Also, McDONALD'S requires its customers who want a Double Quarter Pounder® to order and pay for a Double Quarter Pounder® with cheese, without cheese.  These practices apply to value meals including a Quarter Pounder® or a Double Quarter Pounder®. The customer is charged for the Quarter Pounder® with cheese, or the Double Quarter Pounder® with cheese, as applicable, both of which include a charge for the cheese.  In all such instances, the cheese for which McDONALD'S charges is not provided to the customer.

100.    It is inequitable to require customers to pay for products that they do not want and are not delivered to them. By doing so, McDONALD'S obtains a substantial benefit at the expense of its customers, by receiving payment for a product it is not delivering to the customer.

101.    McDONALD'S is being unjustly enriched at its customers' expense to the extent that it collects payment, or a percentage of the payment for cheese that is not delivered in connection with the sale of Quarter Pounders®, Double Quarter Pounders®, and value meals that include one of these products.

102.    McDONALD'S has been unjustly enriched to the extent of the amount it receives for cheese that is not delivered to its customers.

103.    Plaintiffs and the members of the U.E. Subclass have sustained damages as a proximate result of McDONALD'S actions.

WHEREFORE, Plaintiffs KISSNER and WERNER, individually and on behalf of all others similarly situated, hereby demands:

j.   certification of the proposed Plaintiff U.E. Subclass,

k.   appointment of the Plaintiffs as representatives of the Plaintiff U.E. Subclass,

l.   appointment of the undersigned counsel as lead counsel for the Plaintiff U.E. Subclass,

m.   an award of compensatory damages,

n.   an award of pre and post-judgment interest,

o.   an award of taxable costs, and

p.   any and all such further relief as this Court deems just and proper.

## **JURY TRIAL**

Plaintiffs KISSNER and WERNER and all Class Members demand a jury trial on all issues so triable.

LAVIN LAW GROUP, P.A.
Attorneys for Plaintiff
2670 NE 215TH Street
Miami, Florida 33180
Telephone: (954) 967-2788
Facsimile: (954) 983-7021
Email: alavin@lavinlawyers.com

BY: _____
ANDREW T. LAVIN
FL BAR NO. 260827

K:\Clients\ATL\McDonalds\Pleadings\Complaint (Rev by ALavin 5-01-18).docx