**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

Case No.:18-cv-61026-XXXX

CYNTHIA E. KISSNER,
on her behalf and on behalf of all
others similarly situated, and
LEONARD WERNER, on his
behalf and on behalf of all others
similarly situated,

        Plaintiffs,

        vs.

McDONALD'S CORPORATION,
a Delaware corporation, and
McDONALD'S USA, LLC, a
Delaware limited liability company,

        Defendant.
_____/

Judge: William P. Dimitrouleas

## AMENDED CLASS ACTION COMPLAINT

Plaintiffs CYNTHIA E. KISSNER, on her behalf and on behalf of all others similarly situated, and LEONARD WERNER, on his behalf and on behalf of all others similarly situated, sue Defendant McDONALD'S CORPORATION, a Delaware corporation and McDONALD'S USA, LLC, a Delaware corporation, and allege as follows:

## INTRODUCTION

1.    McDonald's,[1] through its company owned and franchised restaurants, sells billions of hamburgers, and other related products, including french fries and soft drinks, often sold in combination packages. Among McDonald's signature hamburgers is the Quarter Pounder®,

---

[1] Throughout this Amended Complaint reference to "McDonald's" shall include reference to the business operations of the McDonald's organization conducted by Defendants McDONALD'S CORPORATION and all of its subsidiaries, including McDONALD'S USA, LLC, and all McDonald's franchisees.

1

which is comprised of a one-quarter pound hamburger with onion, pickles, ketchup and mustard on a bun.  McDonald's also sells a Double Quarter Pounder®, which is comprised of two one-quarter pound hamburgers and all of the other components of a Quarter Pounder®.  McDonald's offers both of these products with two slices of cheese added, advertising and selling them as a Quarter Pounder® with cheese, and a Double Quarter Pounder® with cheese.  McDonald's restaurants charge between .30¢ to .90¢ for the cheese added to these products.

2.     McDonald's also offers value meals, comprised of one of its hamburger products, french fries and a drink.  Over time, McDonald's has offered value meals that include either a Quarter Pounder®, a Quarter Pounder® with cheese, a Double Quarter Pounder®, or a Double Quarter Pounder® with cheese.

3.     For years, McDonald's advertised and displayed on menus a Quarter Pounder®, a Quarter Pounder® with cheese, a Double Quarter Pounder®, and a Double Quarter Pounder® with cheese, as four separate items available to be purchased at McDonald's restaurants.

4.     At some point, while McDonald's continued to offer the Quarter Pounder® and the Double Quarter Pounder®, it ceased separately displaying these products for purchase on the restaurants' menus.  Instead, McDonald's only listed the Quarter Pounder® with cheese and Double Quarter Pounder® with cheese as menu items, including their availability for purchase as part of a value meal.  A customer who wanted a Quarter Pounder®, was required to order and pay for a Quarter Pounder® with cheese, which was given to the customer without cheese.  Similarly, when a customer wanted a Double Quarter Pounder®, the customer was required to order and pay for a Double Quarter Pounder® with cheese, which was given to the customer without cheese. This practice was also employed when a customer wanted a value meal that included either a Quarter Pounder® or a Double Quarter Pounder®.

5.     As a result, notwithstanding the availability of Quarter Pounders® and Double Quarter Pounders®, customers are being overcharged for these products, by being forced to pay for two slices of cheese, which they do not want, do not order or receive, to be able to purchase their desired product.

6.     Recently, McDonald's has resumed advertising and offering the Quarter Pounder®, which can be ordered through its mobile app, and through computerized kiosks located in certain of its restaurants.  Nonetheless, if a customer places their order at the counter or a drive through window of the restaurant, they still cannot purchase a Quarter Pounder®, and instead, are required to order and pay for a Quarter Pounder® with cheese, thereby being forced by pay for cheese that is not wanted or received.

7.     McDonald's recent practice of offering Quarter Pounders® when ordered electronically, confirms that the Quarter Pounder® has always been, and remains a standard menu item that is offered for sale by McDonald's, and affirms the impropriety of McDONALD'S COS. practice of forcing customers who order at a restaurant's counter or drive through to pay for unwanted cheese that is not provided.

8.     As is more fully explained herein, these practices have occurred, and continue to occur at McDonald's restaurants throughout the country.

9.     Through this action, Plaintiffs are not claiming that McDonald's customers who want to customize an offered product by deleting a standard ingredient, such as pickles, should be relieved from having to pay for the eliminated standard component of the product. Instead, because a Quarter Pounder® is a standard product that does not include cheese, Plaintiffs are seeking relief on behalf of McDonald's customers who were forced to pay for a second product (cheese) that is not a component of the desired, offered product (the Quarter Pounder®), even when the second product is not wanted and not received.

10.     The practice of forcing customers to pay for cheese they do not receive as a condition to purchasing a Quarter Pounder®, a Double Quarter Pounder®, or a value meal that includes one of these products, is anticompetitive, and a per se violation of the antitrust laws, constituting an illegal tying arrangement.

11.     This practice is also unfair, and is deceptive and misleading to the public, because notwithstanding the product history, promotion, advertising and availability of the Quarter Pounder® and the Double Quarter Pounder®, these products are not always being offered for sale either separately, or as part of a value meal, and instead the customer is being overcharged, and being compelled to pay for unwanted and undelivered cheese.

12.     Defendants are being unjustly enriched by these practices because they receive payment to which they are not entitled for cheese that is not delivered to their customers.

## The Parties and the Nature of the Proceedings

13.     Plaintiff CYNTHIA E. KISSNER ("KISSNER"), is sui juris, and a resident of Broward County, Florida, who regularly eats at McDonald's restaurants, and often orders Quarter Pounders®, Double Quarter Pounders®, and has ordered value meals that include one of these products.

14.     Plaintiff LEONARD WERNER ("WERNER"), is sui juris, and a resident of Miami-Dade County, Florida, who regularly eats at McDonald's restaurants, and often orders Quarter Pounders®, and Double Quarter Pounders®.

15.     Defendant McDONALD'S CORPORATION ("McDONALD'S CORP"), is a publicly owned corporation organized, existing, and in good standing under the laws of the state of Delaware.  McDONALD'S CORP. owns and leases locations for McDonald's restaurants, and establishes policies and procedures for the operations of McDonald's restaurants. McDONALD'S

CORP is the parent corporation of all affiliated McDonald's corporations, including Defendant McDONALD'S USA, LLC.

16.    Defendant McDONALD'S USA, LLC ("McDONALD'S LLC"), is a limited liability company, existing and in good standing under the laws of the state of Delaware. McDONALD'S CORP. formed McDONALD'S LLC as a subsidiary of McDONALD'S CORP., for McDONALD'S LLC to serve as the franchisor of McDonald's franchised restaurants located throughout the United States, and to own and operate the company owned McDonald's restaurants located throughout the United States.   Throughout this Amended Complaint reference to "McDONALD'S COS." shall be a reference to both McDONALD'S CORP. and McDONALD'S USA.

17.    This is an action maintained on behalf of the Plaintiffs, individually, and as class representatives of the classes defined herein, for the recovery of damages in excess of the jurisdictional limits of this Court, exclusive of attorney's fees and costs, for the commission of unfair and deceptive trade practices, for unjust enrichment, and for violations of the Sherman Act for which the Plaintiff class members are entitled to recover treble damages and attorney's fees.

**Jurisdiction and Venue**

18.    This Court has jurisdiction over this cause pursuant to:

a.    28 U.S.C. §1331, with respect to the claims asserted under federal law, and

b.    28 U.S.C. §1332 (d), with respect to the state court claims that are asserted on a class wide basis. With respect to these claims, the matter in controversy exceeds $5 million, exclusive of interest and costs, and there are members of the class who are citizens of a state different from that of Defendants McDONALD'S CORP. and McDONALD'S USA.

This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

19.     This Court has personal jurisdiction over Defendants McDONALD'S CORP. and McDONALD'S USA because they are both registered and authorized to do business, and in fact conduct business, in Florida, including in the Southern District of Florida, they have sufficient minimum contacts within this District, and they otherwise intentionally avail themselves of the markets in this state and in this District.  McDONALD'S CORP. owns and leases McDonald's locations throughout Florida, including in this District.  McDONALD'S USA operates and franchises restaurants throughout Florida, including in this District.  Both Defendants also conduct business in Florida, including in this District, through their promotion, marketing, distribution, and sale of McDonald's products, thus rendering the exercise of jurisdiction by this Court permissible under Florida law and the U.S. Constitution.

20.     Venue of this cause is proper in the Southern District of Florida pursuant to 28 U.S.C. §1391 (a), because there are a number of McDonald's restaurants owned by McDONALD'S USA in the District, a substantial part of the events or omissions giving rise to the claims at issue arose in this District, Class Members including the named Plaintiffs, residing in this District, have been harmed as a result of the Defendants' acts or omissions in this District, and Defendants are subject to the Court's personal jurisdiction with respect to this action.

## Factual Allegations

### A.  McDonald's

21.     McDonald's is an American hamburger fast food restaurant chain that was founded in 1940. The first McDonald's franchise using the golden arches logo opened in Phoenix, Arizona in 1953. There are currently over 14,000 McDonald's restaurants located throughout the United States, of which approximately 82% are franchised. McDONALD'S USA owns the remaining approximate

2500 restaurants located throughout the United States (referred to as "Company Owned Restaurants"). McDONALD'S CORP. owns or leases the locations at which McDonald's restaurants operate.

22. McDONALD'S CORP. oversees and controls all of McDonald's business activities, which it refers to as the "McDonald's System", which is defined by McDonald's Franchise Disclosure Documents as a concept of restaurant operations that includes, among other things, certain rights in trademarks, manuals, and other confidential business information, operational, real estate, and marketing information, and the expertise and continuing information that McDonald's provides.

23. McDONALD'S CORP. actively participates in, and controls the actions of all of its subsidiaries, including McDONALD'S USA, to establish and implement the McDonald's System. McDONALD'S CORP. and McDONALD'S USA act in concert to establish policies and procedures pursuant to which all McDonald's restaurants operate.

24. As part of the McDonald's System, McDONALD'S COS. establish business practices for all 14,000+ of the McDonald's restaurants located within the United States. Only products approved by McDONALD'S COS. can be sold in McDonald's restaurants. All advertising is coordinated and implemented by McDONALD'S COS. Store signage, including the menus, are developed by McDONALD'S COS., and is distributed to all locations. Each restaurant's equipment, including the cash registers and kiosks, are designed and approved by McDONALD'S COS. McDONALD'S COS. has developed a mobile application (the "App"), which is available for, and used by all restaurants, through which customers can place orders on their phones and pick up their order at a selected restaurant. The App includes a menu that identifies the products available to be purchased, and lists their prices. McDONALD'S COS. dictate to all McDonald's restaurants which products may be sold, how they are advertised and

sold, and their relative prices.  Even if McDONALD'S COS. does not specify the exact prices for which authorized products are sold by franchisees, pursuant to McDONALD'S COS.' policies and directives:

    a.    the prices charged for all products in all Company Owned Restaurants are set by McDONALD'S COS., and

    b.    the products that all McDonald's franchisees can offer for sale, the policies regarding the pricing structure of all products, and whether additional charges can be imposed for adding toppings or ingredients to standard products, are all established and controlled by McDONALD'S COS.

### B. The Quarter Pounder® and other Burgers

25.    One of McDonald's signature products is the Quarter Pounder®. In 1975, the Quarter Pounder® was trademarked, and was thereafter advertised and marketed as a product that includes the following components:

    a.    one Topp's ¼ lb frozen beef patty

    b.    one sesame seed bun

    c.    one tablespoon fresh onion…diced

    d.    mustard, ketchup

    e.    two HEINZ hamburger slices (pickles)

Over the ensuing years, McDonald's offered the Quarter Pounder® for sale at McDonald's restaurants.

26.    At some point, in addition to the Quarter Pounder®, McDonald's began offering as a separate listed menu item, a Quarter Pounder® to which two slices of cheese were added. This product has been, and continues to be advertised and marketed as a "Quarter Pounder® with cheese", affirming that the product being offered for sale is a Quarter Pounder® hamburger to

which cheese is added. The price of a Quarter Pounder® with cheese includes a charge for the two pieces of cheese that are added to the Quarter Pounder®.

27. At some point, McDonald's began offering for sale a Double Quarter Pounder®, which is a Quarter Pounder® with a second Topp's ¼ frozen beef patty. McDonald's also offered for sale as a menu item a Double Quarter Pounder® with cheese, which is a Double Quarter Pounder® to which two slices of cheese are added. The price of a Double Quarter Pounder® with cheese includes a charge for the two pieces of cheese that are added to the Double Quarter Pounder®.

28. McDonald's also offers value meals, which includes one of its offerings of hamburgers, with french fries and a soft drink, for a lower price than the price for which the items can be separately purchased. Value meals have been available which have included Quarter Pounders®, Quarter Pounders® with cheese, Double Quarter Pounders®, or Double Quarter Pounders® with cheese.

29. McDonald's offers certain menu items which, by design and composition, include cheese. McDonald's offers a Big Mac®, which is a trademarked product whose components include two beef patties, special sauce, lettuce, cheese, pickles and onion, on a sesame seed bun. The price of a Big Mac® includes a charge for the cheese that is included as a component of the standard product.

30. When McDonald's adds cheese or any other ingredients to a Quarter Pounder® to create a standard menu item, the customer is charged for these additional products. This is the case with respect to the Quarter Pounder® with cheese. McDonald's also offers Signature Crafted® Sandwiches, which are either Quarter Pounders® or chicken with different toppings and ingredients, including:

     a.    Bacon Smokehouse – Quarter Pounder® with Applewood smoked bacon, smoked bacon-onion sauce, real white cheddar, mild sweet mustard sauce and in-house fried onion rings.

     b.    Garlic White Cheddar Sandwich – Quarter Pounder® with garlic aioli, garlic chips, white cheddar cheese, tomato, and lettuce.

The prices for these products are higher than the price of a Quarter Pounder® because of the cost of the additional toppings and ingredients, including cheese, that are added to the Quarter Pounder®.

31.    If a McDonald's customer wants to customize a standard product and add cheese, they will pay between .20¢ to .40¢ for each slice of cheese added.

32.    McDonald's also offers both a hamburger and a cheeseburger.  A cheeseburger includes cheese as one of its components. McDonald's charges a higher price for a cheeseburger than for a hamburger, the price differential being attributable to the cost of the cheese included as a component of a cheeseburger. McDonald's does not require its customers to order and pay for a cheeseburger without cheese, to purchase a hamburger.

### C. McDonald's Sales Practices

33.    Customers can purchase products from McDonald's by:

     a.    entering the restaurant and ordering at the counter (the "Counter"),

     b.    ordering at the drive through (the "Drive Through"),

     c.    recently, by ordering through use of the App, which can be downloaded to a phone or other electronic device, and

     d.    recently, at certain restaurants by entering the restaurant and self-ordering at a kiosk, using a touchscreen to place their orders (the "Kiosk").

In recent years, McDonald's point of purchase advertising, signage, and menus at the restaurants have been formatted so that many products and offerings are assigned a number. McDonald's menus have identified the Quarter Pounder® with cheese and the Double Quarter Pounder® with cheese as items on the menus, both of which are assigned numbers.  For some time, McDonald's Counter and Drive Through have not listed as menu items either the Quarter Pounder®, the Double Quarter Pounder®, or value meals including these products.

34.    When a customer purchases a Quarter Pounder® at the Counter or the Drive Through, if they order from the menu and use the numbers assigned to products, they will ask for the number assigned to the Quarter Pounder® with cheese, and order it without cheese. Pursuant to McDONALD'S COS.' policies and directives, if the customer orders a Quarter Pounder® by name, they are required to order a Quarter Pounder® with cheese, and order it without cheese.  In either event, pursuant to McDONALD'S COS.' policies and directives, the customer is charged for a Quarter Pounder® with cheese, and receives a Quarter Pounder®. This also applies to the ordering and purchase of a Double Quarter Pounder®.   In all such instances, McDonald's overcharges the customers for their desired products, because the customers are charged between .30¢ and .90¢ for two slices of cheese the customers do not want, do not order, and do not receive.

35.    The receipts for the purchases of these products corroborates McDonald's practices. The following receipts were given to Plaintiff KISSNER for her purchases, ordered at the Counter:

RECEIPT "A":                    RECEIPT "B":

**1341**

BUY ONE GET ONE FREE QUARTER POUNDER
W/CHEESE OR EGG MCMUFFIN
Go to www.mcdvoice.com within 7 days.
Validation Code:
OUR GOAL = HIGHLY SATISFIED
Not satisfied, call 954-438-2342
Survey Code:
10604-13410-30818-12355-00088-9

McDonald's Restaurant #10934
12480 S PINES BLVD.
PEMBROKE PINES, FL 33027-1734
TEL# 954-435-2342

KS# 13        05/09/2018 12:35 PM
Side1              Order 41

1 Qtr Pounder Cheese         4.19
  NO American Cheese
1 Qtr Pounder Cheese         4.19

Subtotal                     8.38
Tax                          0.51
Take-Out Total               8.89

Cashless                     8.89
Change                       0.00

MEM# 4896/:
CARD ISSUER        ACCOUNT#
VISA CREDIT SALE ***********0365
TRANSACTION AMOUNT           8.89
CHIP READ
AUTHORIZATION CODE - 192050
SEQ# 026091
AID: A0000000031010

General Manager: Rose Morga
NOW HIRING

Apply Online: www.mcdonalds.com/careers


BUY ONE GET ONE FREE QUARTER POUNDER
W/CHEESE OR EGG MCMUFFIN
Go to www.mcdvoice.com within 7 days.
Validation Code:
OUR GOAL = HIGHLY SATISFIED
Not satisfied, call 954-434-6938
Survey Code:
05854-13280-32318-19007-00145-0

McDonald's Restaurant #5854
10260 GRIFFIN RD
COOPER CITY, FL 33328
TEL# 954-434-6938

KS# 13        03/23/2018 07:00 PM
Side1              Order 28

1 M Vanilla Shake            3.29
1 Dbl Qtr Cheese             5.19
  NO American Cheese
1 Dbl Qtr Cheese             5.19

Subtotal                    13.67
Tax                          0.83
Take-Out Total              14.50

Cashless                    14.50
Change                       0.00

MEM# 680119
CARD ISSUER        ACCOUNT#
US DEBIT SALE  ***********2590
TRANSACTION AMOUNT          14.50
CHIP READ
AUTHORIZATION CODE - 586641
SEQ# 043199
AID: A0000000980840

General Manager: Amanda Aquey
NOW HIRING

Apply Online: www.mcdonalds.com/careers

Receipt "A" evidences that, in connection with this transaction, Plaintiff KISSNER was charged the price of a Quarter Pounder® with cheese for both the Quarter Pounder® with cheese and for the Quarter Pounder® she purchased. Receipt "B" evidences that, in connection with this transaction, Plaintiff KISSNER was charged the price of the Double Quarter Pounder® with cheese for both the Double Quarter Pounder® with cheese and for the Double Quarter Pounder® she purchased.

36.     Plaintiff WERNER has experienced the same practices. Plaintiff WERNER received Receipt "C", in connection with his purchase of a Quarter Pounder® and a Quarter Pounder® with cheese, which reflects that he was charged the same price for a Quarter Pounder® and for a Quarter Pounder® with cheese. Plaintiff WERNER received Receipt "D", when he ordered a Double Quarter Pounder® and a Double Quarter Pounder® with cheese, and was charged the same price for both products.

12

**RECEIPT "C":**

```
BUY ONE GET ONE FREE QUARTER POUNDER
    W/CHEESE OR EGG MCMUFFIN
Go to www.mcdvoice.com within 7 days.
 Validation Code:_____
  OUR GOAL = HIGHLY SATISFIED
 Not satisfied, call 954-434-6938
        Survey Code:
 05954-11360-33218-17232-00141-8

    McDonald's Restaurant #5054
        10260 GRIFFIN RD
       COOPER CITY, FL 33328
        TEL# 954-434-6938

KS# 13          03/20/2018 05:23 PM
Side1                      Order 60

1 Mighty Heal 6 Piece           4.99
  1 Tangy Honey Must Cup
  1 Extra Small Fries
  1 Snoopy
  1 Apple Juice
1 Qtr Pounder Cheese            4.19
  NO American Cheese
1 Qtr Pounder Choose            4.19

Subtotal                       13.37
  Tax                           0.81
Take-Out Total                 14.18

Cashless                       14.18
Change                          0.00

MER# 668119
CARD ISSUER        ACCOUNT#
VISA CREDIT SALE ************4365
TRANSACTION AMOUNT      14.18
CHIP READ
AUTHORIZATION CODE - 960970
SEQ# 042282
AID: A0000000031010

    General Manager: Amanda Aquey
            NOW HIRING

Apply Online: www.mcdonalds.com/careers
```

**RECEIPT "D":**

```
BUY ONE GET ONE FREE QUARTER POUNDER
    W/CHEESE OR EGG MCMUFFIN
Go to www.mcdvoice.com within 7 days.
 Validation Code:_____
  OUR GOAL = HIGHLY SATISFIED
 Not satisfied, call 954-434-6938
        Survey Code:
 0b654-13360-31410-17333-00141-9

    McDonald's Restaurant #5054
        10260 GRIFFIN RD
       COOPER CITY, FL 33328
        TEL# 954-434-6938

KS# 13          03/14/2018 05:39 PM
Side1                      Order 35

1 Dbl Qtr Cheese                5.19
  NO American Cheese
1 Dbl Qtr Cheese                5.19
1 Happy Meal 4 Piece            3.00
  1 Ketchup Packet
  1 Apple Slices
  1 Snoopy
  1 Apple Juice

Subtotal                       13.38
  Tax                           0.81
Take-Out Total                 14.19

Cashless                       14.19
Change                          0.00

MER# 668119
CARD ISSUER        ACCOUNT#
Visa SALE      ************1839
TRANSACTION AMOUNT      14.19
AUTHORIZATION CODE - 275507
SEQ# 040493

    General Manager: Amanda Aquey
            NOW HIRING

Apply Online: www.mcdonalds.com/careers
```

37.     Further, customers who want to purchase a value meal that includes a Quarter Pounder® or a Double Quarter Pounder®, and place their order using the numbers assigned to the value meal on the menus, are forced to order a value meal that includes either a Quarter Pounder® with cheese, or a Double Quarter Pounder® with cheese, and to order it without cheese. Even if the value meal is ordered by description rather than by number, the customer is placed in the same position. In both instances, these customers are charged the price of a value meal that includes a Quarter Pounder® with cheese or a Double Quarter Pounder® with cheese, notwithstanding that they want a value meal that includes a Quarter Pounder® or a Double Quarter Pounder®.  In all such instances, the value meal delivered includes a Quarter Pounder® or a Double Quarter Pounder®, as applicable.

38.     Notwithstanding McDonald's ongoing practices, McDONALD'S COS. has recently affirmed that a Quarter Pounder® remains a standard product that can be purchased, for less than a Quarter Pounder® with cheese, and that a Quarter Pounder® value meal can be purchased, and for less than the cost of a value meal that includes a Quarter Pounder® with cheese.

39.     McDONALD'S COS. recently updated its App, which is created and operated by McDONALD'S COS. for use by all McDonald's restaurants. On its current App, McDONALD'S COS. offers all restaurants the ability to list a Quarter Pounder® as a menu item, and to also list a Quarter Pounder® with cheese as a separate menu item, as follows:

[2]



**Quarter Pounder With Cheese**
$4.19 530 Cal



**Quarter Pounder Hamburger**
$3.29  430 Cal

Accordingly, McDONALD'S COS. does offer a Quarter Pounder® as a menu item, and charges less for a Quarter Pounder® than for a Quarter Pounder® with cheese.

40.     Similarly, the App includes both a value meal that includes a Quarter Pounder® and a value meal that includes a Quarter Pounder® with cheese as separate available menu items, as follows:

---

[2] These photographs, and accompanying text are not side by side on the App menu, and instead are included among photographs of all available McDonald's menu items.



41.     Also, a Quarter Pounder® and a Quarter Pounder® with cheese are now separately listed on Kiosk menus, which are created by McDONALD'S COS. for use in all restaurants, although they are not yet installed in all restaurants. The Kiosk menu includes both the Quarter Pounder® and the Quarter Pounder® with cheese, as follows:

 

42.     Further, McDonald's recently began using fresh patties instead of frozen patties for all of their products that include a quarter pound hamburger, and have advertised this change. In conjunction with doing so, McDONALD'S COS. issued a press release, which included the following:

---

[3] These photographs and accompanying text are not side by side on the App menu, and instead, are included among photographs of all available McDonald's menu items.
[4] These photographs and accompanying text are not side by side on the kiosk menu, and instead, are included among photographs of all available McDonald's menu items.



Through the press release McDONALD'S COS. confirmed that a Quarter Pounder® is a standard product it offers for sale, and is a different menu item than a Quarter Pounder® with cheese.

43.     Further, McDONALD'S COS. has advertised the availability of "New Quarter Pounder® Burgers", thereby affirming that the base standard product that McDonald's offers is a Quarter Pounder®, to which it adds toppings and ingredients, including cheese. One example of McDONALD'S COS.' advertising of the Quarter Pounder® is the following:



McDONALD'S COS.' promotion and advertising of the fresh beef Quarter Pounder® as a standard, base product included dispensing oversized napkins at the restaurants, as follows:



This advertising and promotion affirms that the Quarter Pounder® has always been, and remains, a standard product sold by McDonald's, and that a Quarter Pounder® with cheese, is a Quarter Pounder® to which two slices of cheese are added.

44.     Further, of late, there are third party companies that provide delivery services for restaurants, including McDonald's restaurants. These third party delivery services accept electronic food orders for products from various restaurants, fill the order, and deliver it to the customer. Certain of these third party delivery services list on their menus both a Quarter Pounder® and a Quarter Pounder® with cheese, and charge less for the Quarter Pounder® than for the Quarter Pounder® with cheese, as follows:



5



---

[5] These items are not listed sequentially in this order on the complete menu.

19

These third party companies' systems are synced with McDonald's electronic ordering system, and the third party companies are able to offer both the Quarter Pounder® and the Quarter Pounder® with cheese, and charge different prices for them because McDonald's offers a Quarter Pounder® to the third party delivery companies as a separate, standard product for a lower price than a Quarter Pounder® with cheese.

45.     Notwithstanding the customers' ability to order a Quarter Pounder® using the standardized App, Kiosk, or third party delivery services, customers who walk into, or drive through a McDonald's restaurant today and order a Quarter Pounder® at the Counter or the Drive Through, are still customarily, pursuant to McDONALD'S COS. Pursuant to policies and directives applicable to franchised restaurants and Company Owned Restaurants, forced to order, and are charged the price of a Quarter Pounder® with cheese to purchase a Quarter Pounder®. There are rare occasions on which a cashier in a McDonald's restaurant does not follow McDONALD'S COS.' policies and directives, and may accept an order for a Quarter Pounder® at the Counter or the Drive Through. This establishes that a Quarter Pounder® is a standard menu item, and that McDONALD'S COS.' computerized cash register system installed in all restaurants enables the McDonald's restaurants to accept an order for, and to sell Quarter Pounders®. Also, customers who want a value meal that includes a Quarter Pounder® still have to order and pay the higher price for a value meal that includes either a Quarter Pounder® with cheese, or a Double Quarter Pounder® with cheese, as applicable.

46.     Ultimately, through these practices, customers who want a Quarter Pounder® or a Double Quarter Pounder®, or a value meal including one of these products, have been overcharged, and coerced to order, purchase and pay for cheese that they do not want and do not receive as a condition to their purchase of the desired, offered hamburger.

47.     McDONALD'S COS. benefit from the practices described herein, and from each of the sales made pursuant to these practices, in manners including the following:

a.      McDONALD'S USA owns McDonald's restaurants at which the disputed sales occur, at which McDONALD'S USA directly collects all sums paid for the products in issue,

b.      McDONALD'S USA receives franchise fees from its franchisees based on their revenues, which includes the revenues generated from the practices described herein, and

c.      As a result of these practices, McDonald's restaurants profit margins are increased, as are the profit margins of its franchisees, which benefits McDONALD'S CORP'S value and stock price, and facilitates McDONALD'S USA's sale of new franchises.

48.     The named Plaintiffs have purchased Quarter Pounders®, Double Quarter Pounders®, and value meals including these products, and have been charged the prices charged for the Quarter Pounder® with cheese, the Double Quarter Pounder® with cheese, and the price of value meals that include these products.

**<u>Facts Specific to Named Plaintiffs</u>**

49.     During the four years before the filing of this action (the "Relevant Time Period"), within the District, there were occasions on which Plaintiffs KISSNER and WERNER purchased and received Quarter Pounders® and Double Quarter Pounders®, and were charged for Quarter Pounders® with cheese and Double Quarter Pounders® with cheese.

50.     Also, during the Relevant Time Period, within the District, there were occasions on which Plaintiff KISSNER purchased and received value meals that included a Quarter Pounder®

or a Double Quarter Pounder®, and was charged for value meals that included a Quarter Pounder® with cheese or a Double Quarter Pounder® with cheese.

51.     Plaintiffs KISSNER and WERNER suffered injury as a result of their purchases because they were overcharged, and were required to pay for cheese, which is not a component of either a Quarter Pounder® or a Double Quarter Pounder®, that they did not want and did not receive.

## Class Action Allegations

52.     Plaintiffs KISSNER and WERNER bring this lawsuit as a class action on their own behalf and on behalf of all other persons similarly situated as members of the proposed class, pursuant to Fed. R. Civ. P. 23 (a), (b) (1), (b) (2), (b) (3), and (c) (4). This action satisfies the numerosity, commonality, typicality, adequacy, ascertainability, predominance, and superiority requirements of these provisions.

53.     The Class claims are based on McDonald's conduct of misrepresenting their products through its advertising and signage, and charging customers for unwanted and undelivered cheese when a customer wants a Quarter Pounder®, a Double Quarter Pounder®, or a value meal that includes one of these products.

54.     Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23 (a), (b) (1), (b) (2), (b) (3), and (c) (4), on behalf of themselves and a nationwide class, defined as follows:

## Nationwide Class

With respect to Count I, the Sherman Act Tying Arrangement claim, all retail consumers who, during the Relevant Time Period, purchased from a McDonald's restaurant in the United States, either:

    a.    a Quarter Pounder®, and was charged for a Quarter Pounder® with cheese,
    b.    a Double Quarter Pounder®, and was charged for a Double Quarter Pounder® with cheese,
    c.    a value meal that included a Quarter Pounder®, or

22

      d.     a value meal that included a Double Quarter Pounder®.

55.    Plaintiffs also seek to represent the following subclasses, defined as follows:

## Florida Subclass

With respect to Count II, the Florida Deceptive and Unfair Trade Practices Act claims, all retail consumers who, within the Relevant Time Period, purchased from a McDonald's restaurant in Florida, either:

      a.     a Quarter Pounder®, and was charged for a Quarter Pounder® with cheese,
      b.     a Double Quarter Pounder®, and was charged for a Double Quarter Pounder® with cheese,
      c.     a value meal that included a Quarter Pounder®, or
      d.     a value meal that included a Double Quarter Pounder®.

## U.E. Subclass

With respect to Count III, the Unjust Enrichment claim, all retail consumers who, within the Relevant Time Period, purchased from a McDonald's restaurant in Florida, California, New York, Pennsylvania, Ohio, Michigan, Nebraska, Illinois or Texas, or in such additional states ultimately included herein (collectively the "U.E. States"), either:

      a.     a Quarter Pounder®, and was charged for a Quarter Pounder® with cheese,
      b.     a Double Quarter Pounder®, and was charged for a Double Quarter Pounder® with cheese,
      c.     a value meal that included a Quarter Pounder®, or
      d.     a value meal that included a Double Quarter Pounder®.

56.    Excluded from the Nationwide Class, the Florida Subclass and the U.E. Subclass

(the Nationwide Class, the Florida Subclass, and the U.E. Subclass each separately referred to as

a "Class", and collectively as the "Classes", and the members of the Classes referred to as the

"Class Members"), are:

      a.     Defendants McDONALD'S CORP and McDONALD'S USA, any entity or

             division in which Defendants have a controlling interest, and their

             respective legal representatives, employees, officers, directors, assigns,

             heirs, successors, whole or part subsidiaries, their affiliates, and franchisees,

      b.     the Judge to whom this case is assigned and the Judge's staff,

      c.     governmental entities, and

d.  those persons who have suffered personal injuries as a result of the facts alleged herein.

57.  Plaintiffs reserve the right to add to or amend the Class definitions if discovery or further investigation reveal that any Class should be added, expanded, divided into additional subclasses, or modified in any other way.

**Numerosity**

58.  This action satisfies the numerosity requirement of Fed. R. Civ. P. 23 (a) (1). Upon information or belief, during the Relevant Time Period, through its restaurants, McDonald's has sold hundreds of thousands or millions of Quarter Pounder® and Double Quarter Pounders® while charging for cheese that was not ordered, wanted or delivered, both nationwide, within the state of Florida, and within the U.E. States. Each of these Classes are so numerous that individual joinder of all Class Members is impracticable.

59.  Although the exact number of Class Members is uncertain and can only be ascertained as described herein, the number is great enough that joinder is impracticable. Further, the disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

**Common Questions of Law and Fact**

60.  There are numerous questions of law and fact that are common to the claims of Plaintiffs and all Class Members, which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the Class Members are the following:

a.  Is the Quarter Pounder® a trademarked product of McDONALD'S COS.?

b.  Has McDONALD'S COS. advertised and marketed the Quarter Pounder®?

c.  What are the components of a Quarter Pounder®?

d.  Has McDONALD'S COS. offered for sale a Quarter Pounder® with cheese?

e.  Has McDONALD'S COS. offered for sale a Quarter Pounder®?

f.  Does McDONALD'S COS. direct or require a customer who wants a Quarter Pounder® to order and pay for a Quarter Pounder® with cheese?

g.  Has McDONALD'S COS. advertised and marketed the Double Quarter Pounder®?

h.  What are the components of a Double Quarter Pounder®?

i.  Has McDONALD'S COS. offered a Double Quarter Pounder®?

j.  Does McDONALD'S COS. direct or require a customer who wants a Double Quarter Pounder® to order and pay for a Double Quarter Pounder® with cheese?

k.  Does McDONALD'S COS. offer a value meal that includes a Quarter Pounder®, fries, and a drink?

l.  Does McDONALD'S COS. direct or require a customer who wants to purchase a value meal that included a Quarter Pounder® to pay the price of a value meal that includes a Quarter Pounder® with cheese?

m.  Does McDONALD'S COS. offer a value meal that includes a Double Quarter Pounder®, fries, and a drink?

n.  Does McDONALD'S COS. direct or require a customer who wants to purchase a value meal that includes a Double Quarter Pounder® to pay the price of a value meal that includes a Double Quarter Pounder® with cheese?

o.  Are a Quarter Pounder® and cheese two separate products?

p.     Does McDONALD'S COS. have sufficient market power in the sale of burgers to coerce customers to pay for unwanted cheese?

q.     Are a Double Quarter Pounder® and cheese two separate products?

r.     Does McDONALD'S COS. have sufficient market power in the sale of quarter pound burgers in the United States to coerce customers to pay for unwanted cheese?

s.     Has McDONALD'S COS. engaged in unfair or deceptive trade practices with respect to the advertising, marketing, and sale of:

    i.     Quarter Pounders®,

    ii.     Double Quarter Pounders®,

    iii.     Value meals that include Quarter Pounders®, and

    iv.     Value meals that include Double Quarter Pounders®

t.     Has McDONALD'S COS. overcharged for the sale of:

    i.     Quarter Pounders®,

    ii.     Double Quarter Pounders®,

    iii.     Value meals that include Quarter Pounder®, and

    iv.     Value meals that include Double Quarter Pounders®

u.     Has McDONALD'S COS. been unjustly enriched at the Class Members' expense by requiring them to purchase and pay for cheese they do not want or receive?

v.     Have Plaintiffs and the members of the Classes been damaged by McDONALD'S COS.' conduct?

w.     Are Plaintiffs and the members of the Classes entitled to recover damages as a result of McDONALD'S COS. conduct?

x.      Are Plaintiffs and the members of the Classes entitled to recover treble damages as a result of McDONALD'S COS. anticompetitive conduct?

y.      Should McDONALD'S COS. be enjoined from engaging in the practices described herein?

61.      The common questions in this case are capable of generating common answers which are apt to drive the resolution of this action.

**Typicality**

62.      Plaintiffs' legal claims are typical of the claims of the Class Members, and arise from the same course of conduct by McDONALD'S COS. There is a sufficient nexus between the legal claims of the named Plaintiffs and the Class Members.  The representative Plaintiffs, like all Class Members, have been damaged by McDONALD'S COS actions. Further, the factual basis of McDONALD'S COS misconduct is common to all Class Members and represents the common thread of misconduct resulting in damages to all Class Members. The legal claims and relief Plaintiffs seek are typical of the legal claims and relief sought for the Class Members.

**Adequacy of Representation**

63.      Plaintiff KISSNER and Plaintiff WERNER are adequate representatives of the Classes, and will fairly and adequately protect the interests of the Class Members. Plaintiffs KISSNER and WERNER are committed to the vigorous prosecution of this action, and have no conflict with any other Class Members.

64.      Plaintiffs have retained counsel with experience in complex commercial litigation, including in defending various class actions, and in the handling of the type of claims that are asserted in this action. Putative class counsel have the resources, education, and experience to successfully prosecute this class action. Plaintiffs' counsel does not have any relationship with the named Plaintiffs, or interests adverse to those of Plaintiffs or of the Class Members.

**Ascertainability**

65.    The Classes are clearly ascertainable because their members can be readily identified through objective criteria that are administratively feasible through a manageable process, using methods including the following:

      a.    Defendants McDONALD'S COS. maintain records regarding the sale of McDonald's products, including Quarter Pounders®, Quarter Pounders® with cheese that are ordered without cheese, Double Quarter Pounders®, Double Quarter Pounders® with cheese that are ordered without cheese, value meals that include Quarter Pounders® that are ordered without cheese, and value meals including Double Quarter Pounders® that are ordered without cheese. Those members of the Class who used credit cards to pay for their purchases of these products during the Relevant Time Period can be identified from Defendants records, which includes information regarding Class Members' credit card numbers.

      b.    Consumers shall be able to recall and affirm that they are Class Members. The products in issue are not costly. Under such circumstances, it is appropriate to have members of the Classes identify themselves by submitting affidavits affirming their status as Class Members.

**Predominance of Common Issues**

66.    There are numerous common questions of law and fact that predominate over any questions affecting only individual Class Members. The answers to these common questions of law and fact will advance resolution of the litigation as to all Class Members and claims. These predominant common legal and factual questions include each of those identified in paragraph 47, hereof.

## Superiority

67.     Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of McDONALD'S COS. unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

68.     The prosecution of separate actions by the individual Class Members on the claims asserted herein would create a risk of inconsistent or varying adjudications for individual Class Members, which would establish incompatible standards of conduct for McDONALD'S COS.

69.     Because adjudication with respect to individual Class Members would, as a practical matter, be dispositive of the interest of other Class Members, or impair substantially or impede their ability to protect their interests, a class action is superior to all other methods of litigation.

70.     Absent a class action, most Class Members would likely find the cost of litigating their individual claims prohibitively high and they would, therefore, not have any effective remedy at law. Because the damages suffered by each individual Class Member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class Members to redress the wrongs done to each of them, such that most or all Class Members would have no rational economic interest in individually controlling the prosecution of specific actions.  Further, Class Members are disbursed throughout the country, raising the possibility of numerous lawsuits in numerous jurisdictions if this action does not proceed as a class action.

71.     The burden imposed on the judicial system by individual litigation by even a small fraction of the Class Members would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23 (b) (3) (A). Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.

72.     The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class member than would piecemeal litigation. Compared to the expense, burden, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the Court, and the public of class treatment in this Court, making class adjudication pursuant to Fed. R. Civ. P. 23 superior to other alternatives.

## 23 (b) (1) Requirements

73.     Certification is appropriate under Fed. R. Civ. P. 23(b)(1), because the prosecution of separate claims or defenses by or against members would create a risk of:

a.      inconsistent or varying adjudications concerning individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

b.      adjudications with respect to individual Class Members that, as a practical matter, would be dispositive of the interests of other members not parties to the individual adjudications or would substantially impair or impede the ability to protect their interests.

74.     Specifically, the rights of Class Members regarding claims against McDONALD'S COS. for actively tying the sale of two separate products, overcharging for products, charging for unwanted products and unjustly benefitting at the expense of the Class Members, overlap among the Class Members.

75.     Under these circumstances, it is not possible for the rights of Class Members to be determined individually without disposing of or substantially affecting the rights of other Class

Members and their entitlement to recover damages incurred as a result of McDONALD'S COS. acts and omissions.

### Rule 23 (b) (2) Requirements

76.     Certification is appropriate under Fed. R. Civ. P. 23 (b) (2), because McDONALD'S COS. acted in a manner generally applicable to all Class Members, thereby making injunctive or declaratory relief concerning the Classes as a whole, appropriate.

77.     More specifically McDONALD'S COS. have overcharged the Class Members for Quarter Pounders®, Double Quarter Pounders® and value meals including these products, forcing them to pay for an unwanted product they did not receive.

### Rule 23 (b) (3) Requirements

78.     Plaintiff and the Class are seeking money damages. Thus, certification is appropriate under Fed. R. Civ. P. 23 (b) (3), because the common questions set forth above predominate over any questions affecting only individual issues, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The Class Members have an interest in class adjudication rather than individual adjudication because of the overlapping rights. It is highly desirable to concentrate the resolution of these claims in this single forum. Management of the Classes will be less difficult than individual lawsuits.

### Equitable Relief

79.     Classwide declaratory, equitable, and injunctive relief is appropriate under Rule 23(b)(1) and/or (b)(2), because McDONALD'S COS. have acted on grounds that apply generally to the Classes, and inconsistent adjudications with respect to the Defendants' liability would establish incompatible standards and substantially impair or impede the ability of Class Members to protect their interests. Classwide relief assures fair, consistent, and equitable treatment and

protection of all Class Members, and uniformity and consistency in Defendants' discharge of its duties to perform corrective action regarding the products and practices in issue.

## COUNT I
## Sherman Act Tying Arrangement

80.     Plaintiffs KISSNER and WERNER and the Nationwide Class Members incorporate by reference paragraphs 1 through 79.

81.     This is a claim for violations of §1 and §15 of the Sherman Act, for McDONALD'S COS. and the franchisees' combinations in restraint of trade and commerce through the employment of illegal tying arrangements.

82.     The Quarter Pounder® is a distinct product. Cheese is a second, separate, and distinct product from a Quarter Pounder®. Burgers can be purchased at McDonald's restaurants without cheese. Cheese is sold separately in McDonald's restaurants, and can be added to various base products, including the Quarter Pounder®. There is different consumer demand for McDonald's burgers and cheese. A Quarter Pounder® hamburger is a separate and distinct product from cheese, both of which are offered for sale by McDonald's.

83.     The Double Quarter Pounder® is a distinct product. Cheese is a second, separate and distinct product from a Double Quarter Pounder®.

84.     By definition and description, which has been affirmed and reinforced through McDONALD'S COS. promotion and advertising, a Quarter Pounder®, does not include cheese, and is separately available to be purchased. Cheese is a separate and distinct product that can be added to a Quarter Pounder®.

85.     By definition and description, and reinforced through McDONALD'S COS. promotion and advertising, a Double Quarter Pounder® does not include cheese. Instead, cheese is a separate and distinct product that can be added to a Double Quarter Pounder®.

86.     Pursuant to policies and directives applicable to franchised restaurants and Company Owned Restaurants, McDONALD'S COS. forced and coerced members of the Nationwide Class to purchase and pay for the separate and distinct tied product, cheese, as a condition to purchasing the tying product, a Quarter Pounder®, a Double Quarter Pounder®, or value meals including these products, even though the Plaintiff Class Members did not want, and did not receive the tied product. Members of the Nationwide Class are forced to pay for the unwanted tied products that they do not receive as a condition to purchasing a Quarter Pounder® or a Double Quarter Pounder®, or a value meal including one of these products.

87.     The uniqueness and desirability of McDonald's tying products, including the Quarter Pounder® and the Double Quarter Pounder®, and McDonald's dominance in the fast food and quarter pound burger industry are such that McDONALD'S COS. are able to coerce customers to pay for unwanted cheese that is not delivered, as a condition to obtaining the desired tying products.

88.     McDONALD'S COS. has sufficient economic and market power in the nationwide fast food quarter pound hamburger market to force customers to purchase and pay for cheese, even though they do not want the product and do not receive it, as a condition to purchasing a Quarter Pounder® or a Double Quarter Pounder®. The desirability and uniqueness to consumers of the Quarter Pounder® and Double Quarter Pounder® confers the requisite economic power on McDONALD'S COS. in the tying product market to coerce the purchase of, and payment for unwanted and undelivered cheese.

89.     McDONALD'S COS. actions involve a not insubstantial amount of interstate commerce in the tied product market of cheese. The total amount of business in the tied product market of cheese is not insubstantial or de minimis. Annually, customers are forced to purchase

millions of slices of cheese for which McDonald's charges at least .20 cents per slice, when the customers do not want, and do not receive the cheese.

90.     McDONALD'S COS. tying of these two products constitutes a per se violation of the Sherman Act.

91.     Each of the members of the Nationwide Class suffered an antitrust injury by being forced to purchase an unwanted tied product as a condition to purchasing the desired product, and sustained damages as a proximate result of paying for an unwanted tied product that they did not receive. Each of the Plaintiff Nationwide Class Members have suffered an antitrust injury and have been injured in their property by reason of McDONALD'S COS. employing this tying arrangement which is forbidden by the antitrust laws. As a result thereof, pursuant to 15 U.S.C. §15 (a), each of the Nationwide Class Members are entitled to three fold the damages sustained by them, the cost of this suit, and reasonable attorney's fees.

WHEREFORE, Plaintiffs KISSNER and WERNER, individually and on behalf of all of the similarly situated members of the Nationwide Class, hereby demand judgment in their favor and against McDONALD'S COS., jointly and severally, which includes the following:

      a.     certification of the proposed Plaintiffs' Nationwide Class,

      b.     appointment of the Plaintiffs as representatives of the Plaintiffs' Nationwide Class,

      c.     appointment of the undersigned counsel as lead counsel for the Plaintiffs' Nationwide Class,

      d.     the award of compensatory damages,

      e.     award of three fold the damages sustained by each Nationwide Class Member,

      f.     enjoining the continuing wrongful conduct pursuant to 15 U.S.C. §26,

g.   an award of pre and post judgment interest,

h.   an award of taxable costs, and

i.   the recovery of reasonable attorney's fees.

### COUNT II
### VIOLATION OF THE FLORIDA DECEPTIVE
### AND UNFAIR TRADE PRACTICES ACT
### (Florida Subclass)

92.   Plaintiffs KISSNER and WERNER and the Florida Subclass Class Members incorporate by reference paragraphs 1 through 79.

93.   This is an action for relief under §§ 501.201 to 501.213 of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA").

94.   The express purpose of FDUTPA is to "protect the consuming public...from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2), Fla. Stat.

95.   Section 501.203(7), Fla. Stat., defines "Consumer" as "an individual; child, by and through its parent or legal guardian; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; or any other group or combination." Plaintiff and the Florida Subclass Members are "Consumers" within the meaning of §501.203(7), Fla. Stat.

96.   Section 501.203(8), Fla. Stat., defines "Trade or Commerce" as:

> [T]he advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or Commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.

97.   Plaintiffs and the Florida Class Members are consumers protected by FDUPTA.

98.   The advertising, menus, presentation, soliciting, providing, offering, and distributing of Quarter Pounders®, Double Quarter Pounders® and value meals including these

products by McDONALD'S COS. to Plaintiffs and to Florida Class Members is "Trade or Commerce" within the meaning of §501.203(8), Fla. Stat. FDUPTA §501.204(1) declares as unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." The Defendants' acts and omissions as well as its failure to use reasonable care in this matter as alleged herein constitute unconscionable acts or practices, as well as deceptive and unfair acts or practices in the conduct of Defendants' trade or commerce pursuant to §501.204(1), Fla. Stat.

99.     Specifically, for years McDonald's developed a distinct product, trademarked the name "Quarter Pounder®" for the product, and marketed, advertised, and sold Quarter Pounders® and Double Quarter Pounders®. By doing so, McDONALD'S COS. established that the Quarter Pounder® and Double Quarter Pounder® do not include cheese, and are base, standard products that are available to be purchased. Further, by naming and advertising as additional menu items the "Quarter Pounder® with cheese", the "Double Quarter Pounder® with cheese", and other Signature Crafted® Sandwiches, each of which includes a quarter pound burger, McDONALD'S COS. affirmed and reinforced that McDonald's offers for sale a Quarter Pounder®, to which a customer can add cheese, and other ingredients, and a Double Quarter Pounder®, to which a customer can add cheese.

100.     As a result of the creation, naming, history of the sale, advertising, and promotion of the Quarter Pounder®, and the name recognition created with respect thereto, McDONALD'S COS. conveys and represents to their customers that they can purchase a Quarter Pounder®, and that they will be charged less than they will be charged for a Quarter Pounder® with cheese, and that they can purchase a Double Quarter Pounder®, and that they will be charged less than they will be charged for a Double Quarter Pounder® with cheese.

101.     McDONALD'S COS. currently advertises the Quarter Pounder® as a standard product, and McDonalds restaurants offer the Quarter Pounder® for sale if ordered electronically through the App or at the Kiosk, affirming the availability of this product, both separately and as part of a value meal.

102.     Despite the fact that the Quarter Pounder® has always been a standard McDonald's product, and the fact it is now advertised and sold as a standard menu item, McDonald's restaurants regularly sell a Quarter Pounder® with cheese to its customers who want to purchase a Quarter Pounder®, and who placed, and continue to place their orders at the Counter or the Drive Through. McDONALD'S COS. has, and continues to mislead and force the customer to order and pay for a Quarter Pounder® with cheese to receive a Quarter Pounder®, requiring the customer to pay for cheese they do not want and do not receive.

103.     Pursuant to policies and directives applicable to franchised restaurants and Company Owned Restaurants, McDONALD'S COS. overcharges customers for Quarter Pounders®, Double Quarter Pounders®, and for value meals that include these products. McDONALD'S COS. forces customers to pay for cheese they do not want or receive. McDONALD'S COS.' companywide policy in this regard is an unfair and deceptive trade practice.

104.     McDONALD'S COS. have engaged, and continues to engage, in conduct that is unfair, deceptive and misleading to consumers in violation of FDUTPA.

105.     McDONALD'S COS. conduct and business practices are unfair because consumers are overcharged for their desired products, and are forced to purchase and pay for cheese that is not part of the product they want to purchase, which they do not order, they do not want, and they do not receive. The customers are forced to purchase a different product than their desired product, and to overpay for a Quarter Pounder® and for a Double Quarter Pounder®.

106.    McDONALD'S COS. conduct and business practices are deceptive because they are likely to deceive consumers, including Plaintiffs and members of the Florida Class, by misrepresenting through its advertising and promotion that a customer can order and pay for a Quarter Pounder®, or a Double Quarter Pounder®, or value meals including such products, when they could not do so, and now, cannot do so at Counters and Drive Throughs, and instead have to purchase and pay for these products with unwanted cheese.

107.    McDONALD'S COS. conduct and practices misled and caused Plaintiffs and members of the Florida Class to pay for cheese that was not wanted or received, and to overpay for the products they desired.

108.    Plaintiffs and the Florida Subclass have been aggrieved by Defendants' unfair and deceptive practices in violation of FDUPTA, by overpaying for the desired products, and by paying for unwanted products.

109.    As a direct and proximate result of Defendants' violations of FDTUPA, Plaintiffs and the Florida Subclass have suffered actual damages in that they overpaid for Quarter Pounders®, Double Quarter Pounders® and value meals including these products, paying for cheese they did not want or receive, so that Plaintiffs and Florida Subclass Members are entitled to relief pursuant to FDUPTA §501.211(2), Fla. Stat. Plaintiffs and Florida Subclass Members are entitled to recover the difference in value between what they were compelled to pay for and purchase, and what they wanted and received, and all related consequential damages.

110.    Further, as a direct and proximate result of McDONALD'S COS. acts and omissions, Plaintiffs and Florida Subclass Members were forced to retain undersigned counsel and are obligated to pay attorneys' fees and costs. Plaintiffs and Florida Subclass Members are entitled to recover attorney's fees and costs pursuant to §501.2105, Fla. Stat., upon prevailing in this matter.

WHEREFORE, Plaintiffs KISSNER and WERNER, individually and on behalf of all others similarly situated, hereby demand judgment in their favor, and against McDONALD'S COS., jointly and severally, which includes the following:

a.      certification of the proposed Plaintiff Florida Subclass,

b.      appointment of Plaintiffs KISSNER and WERNER as representatives of the Plaintiff Florida Subclass,

c.      appointment of the undersigned counsel as lead counsel for the Plaintiff Florida Subclass,

d.      an award of compensatory damages,

e.      enjoining the wrongful conduct pursuant to §501.211 (1), Fla. Stat.,

f.      an award of pre and post-judgment interest,

g.      an award of taxable costs,

h.      an award of attorney's fees and costs pursuant to §501.2105, Fla. Stat., and

i.      any and all such further relief as this Court deems just and proper.

### COUNT III – UNJUST ENRICHMENT
### (U.E. Subclass)

111.   Plaintiffs KISSNER and WERNER and the U.E. Subclass Members incorporate by reference paragraphs 1 through 79.

112.   McDonald's product line includes a Quarter Pounder® and a Double Quarter Pounder®. Neither of these products include cheese.

113.   Pursuant to policies and directives applicable to franchised restaurants and Company Owned Restaurants, McDONALD'S COS. require a customer who wants a Quarter Pounder® to order and pay for a Quarter Pounder® with cheese, without cheese.  Also, McDONALD'S COS. requires customers who want a Double Quarter Pounder® to order and pay for a Double Quarter Pounder® with cheese, without cheese.  These practices apply to value meals

including a Quarter Pounder® or a Double Quarter Pounder®. The customer is charged for the Quarter Pounder® with cheese, or the Double Quarter Pounder® with cheese, as applicable, both of which include a charge for the cheese.  In all such instances, the cheese for which McDonald's charges is not provided to the customer.

114.    It is inequitable to require customers to pay for products that they do not want and are not delivered to them.  By doing so, McDONALD'S COS. obtains a substantial benefit at the expense of its customers, by receiving payment that is not rightly owed for a product it is not delivering to the customer.

115.    McDONALD'S COS. is being unjustly enriched at its customers' expense to the extent that it collects payment, or a percentage of the payment for cheese that is not delivered in connection with the sale of Quarter Pounders®, Double Quarter Pounders®, and value meals that include one of these products.

116.    McDONALD'S COS. has been unjustly enriched to the extent of the amount it receives for cheese that is not delivered to its customers.

117.    As a result of McDONALD'S COS.' practices, Plaintiffs and the members of the U.E. Subclass had no choice, and did not know they were being forced to overpay for a Quarter Pounder®, a Double Quarter Pounder®, or value meals including these products, and paying for cheese that was not delivered, for which payment was not rightly owed. As a result, Plaintiffs and the members of the U.E. Subclass did not voluntarily pay for the unwanted cheese, and did not have any reason to pay under protest.

118.    Plaintiffs and the members of the U.E. Subclass have sustained damages as a proximate result of McDONALD'S COS. actions.

WHEREFORE, Plaintiffs KISSNER and WERNER, individually and on behalf of all others similarly situated, hereby demands judgment in their favor, and against the McDONALD'S COS., jointly and severally, which includes the following:

a.     certification of the proposed Plaintiff U.E. Subclass,

b.     appointment of the Plaintiffs as representatives of the Plaintiff U.E. Subclass,

c.     appointment of the undersigned counsel as lead counsel for the Plaintiff U.E. Subclass,

d.     an award of compensatory damages,

e.     an award of pre and post-judgment interest,

f.     an award of taxable costs, and

g.     any and all such further relief as this Court deems just and proper.

## <u>JURY TRIAL</u>

Plaintiffs KISSNER and WERNER and all Class Members demand a jury trial on all issues so triable.

I HEREBY CERTIFY that on the 23rd day of July, 2018, I electronically filed the foregoing documents with the Clerk using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

> LAVIN LAW GROUP, P.A.
> Attorneys for Plaintiff
> 2670 NE 215TH Street
> Miami, Florida 33180
> Telephone: (954) 967-2788
> Facsimile: (954) 983-7021
> Email: alavin@lavinlawyers.com
>
> BY:     **/s/ Andrew T. Lavin**
>           Andrew T. Lavin, Esq.
>           FL Bar No.:  260827

## **SERVICE LIST**

Jennifer Olmedo-Rodriguez, Esq.
BUCHANAN INGERSOLL & ROONEY PC
Attorneys for Defendant
Miami Tower
100 SE Second Street, Suite 3500
Miami, Florida 33131-2158
Telephone: (305) 347-5900
Email: jennifer.olmedo-rodriguez@bipc.com

Victoria Oguntoye, Esq.
BUCHANAN INGERSOLL & ROONEY PC
401 East Jackson Street, Suite 2400
Tampa, Florida 33602-5236
Telephone: 813-222-8180
Facsimile: 813-222-8189
Email: victoria.oguntoye@bipc.com

K:\Clients\ATL\McDonalds\Pleadings\Class Action Complaint (Amended) Rev. 7-23-18.docx